**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | **Case No. 2:18-CR-228** |
| **Plaintiff,** : | |
| : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** : | |
| : | |
| **BERNARD OPPONG,** : | |
| : | |
| : | |
| **Defendant.** : | |

## **OPINION & ORDER**

This matter is before the Court on Defendant Bernard Oppong's Emergency Motion to Stay Sentence and for Bail pending his appeal. (ECF No. 72). The Government has filed a response in opposition. (ECF No. 74). For the reasons set forth below, Defendant's Motion is **GRANTED**.

### I.     BACKGROUND

In October 2018, Defendant was charged in a seven-count indictment with one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349; one count of health care fraud, in violation of 18 U.S.C. §§ 1349, 2; four counts of making false health care statements, in violation of 18 U.S.C. §§ 1035, 2; and one count of conspiracy to distribute and dispense a controlled substance, in violation of 21 U.S.C. § 846. A five-day jury trial was held in April 2019 and, after two days of jury deliberation, Mr. Oppong was convicted of one count of health care fraud, three counts of making false health care statements, and one count of conspiracy to distribute and dispense a controlled substance. (ECF No. 29). On September 20, 2019, Mr. Oppong filed for leave to file a motion for a new trial, arguing that his trial counsel was ineffective. (ECF No. 43). On April 22, 2020, this Court denied his motion for a new trial, finding that Mr. Oppong had failed

1

to meet his burden of showing a new trial would be warranted under Federal Rule of Criminal Procedure 33. (ECF No. 52 at 4–5).

On November 13, 2020, this Court sentenced Mr. Oppong to twelve months and one day of imprisonment on each count, with the sentences to run concurrently. (ECF No. 62). Mr. Oppong was also ordered to pay a $500 assessment, a $20,000 fine, and $87,786.75 in restitution. (*Id.*). The Defendant was ordered to self-surrender to the U.S. Marshal on February 12, 2021. (*Id.*). On December 30, 2020, the Defendant filed a timely notice of appeal, following his motion for an extension of time to file this notice after securing new counsel. (ECF Nos. 65, 67–68).

Mr. Oppong has filed an Emergency Motion to Stay Sentence and for Bail ("Emergency Motion"), pending his appeal, under 18 U.S.C. § 3143(b). (ECF No. 72). Mr. Oppong argues that he is not likely to flee or pose a danger to his community. (*Id.* at 7–8). He also argues that his appeal raises a substantial question of law "that could result in a new trial or a complete reversal," on several issues that he believes should be remanded to this Court for initial consideration. (*Id.* at 4–9). The Government opposes Mr. Oppong's Emergency Motion but indicated it would not oppose this Court deferring his reporting day for up to 90 days. (ECF No. 74 at 2). The Government does not assert that the Defendant poses a flight risk or danger to the community. (*Id.* at 4). The Government opposes his Emergency Motion on the grounds that Mr. Oppong has not presented a substantial question of law or fact that is likely to result in a favorable outcome on appeal, as listed in 18 U.S.C. § 3143(b). (*Id.* at 5–12). Mr. Oppong filed a reply in support of his Emergency Motion on February 9, 2021. (ECF No. 75). This matter is now ripe for determination on the merits.

## II.     STANDARD OF REVIEW

The decision to release a defendant pending appeal rests within the sound discretion of a district court. *See United States v. Dixon*, 767 F.2d 922, at *2 (6th Cir. 1985) (citing *Bloss v. People*

*of the State of Michigan*, 421 F.2d 903, 905 (6th Cir. 1970)). The standard of review is whether the trial court abused its discretion. *See United States v. Elkins*, 683 F.2d 143, 144 (6th Cir. 1982). Under 18 U.S.C. § 3143(b), a defendant who is convicted and sentenced to a term of imprisonment must generally be detained pending appeal unless a court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> > (i) reversal,
> > (ii) an order for a new trial,
> > (iii) a sentence that does not include a term of imprisonment, or
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(A–B). If a court makes the requisite findings under § 3143(b), it shall order the release of the person consistent with 18 U.S.C. § 3142(b) and (c). If the defendant is released pending appeal in accordance with the above statute, the court is also required to stay the sentence of imprisonment. Fed. R. Crim. P. 38(b)(1). The statute creates a presumption against release pending appeal. *See United States v. Vance*, 851 F.2d 166, 169–70 (6th Cir. 1988). To overcome this presumption, the defendant bears the burden of proving that the one of the exceptions set forth in 18 U.S.C. § 3143(b)(1) applies. *Id.* (citing *United States v. Pollard*, 778 F.2d 1177, 1181 (6th Cir. 1985)).

### III. LAW & ANALYSIS

#### A. Flight Risk or Danger to Community

This Court must first determine whether Defendant has demonstrated, by clear and convincing evidence, that he is not likely to flee and that he does not pose a danger to his community. Mr. Oppong argues that he does not pose a risk of danger to others or the community.

3

(ECF No. 72 at 7–8). In support of this assertion, Mr. Oppong cites his lack of criminal record prior to the instant offense and a lack of violence in his personal history. (*Id.*). The Defendant also notes that he was convicted of Medicare fraud and related offenses, and that the loss of his medical license means he no longer poses a threat to the community. (*Id.* at 8). Mr. Oppong directs this Court to the numerous letters filed with his sentencing memorandum by community members as illustrative that he poses no danger to the community. (*Id.*). Mr. Oppong also argues that he does not pose a flight risk if his sentence is stayed. (*Id.*). In support of this assertion, Mr. Oppong notes that he has been released on bail for the entirety of the criminal proceedings and has not exhibited any behavior that would suggest he would now flee. (*Id.*). The Government does not contest that Mr. Oppong does not pose a flight risk or a risk of danger to others. (ECF No. 74 at 4).

In determining whether to release a defendant pending trial, judicial officers consider a number of factors under 18 U.S.C. § 3142(g), which aid in determining whether any conditions of release will reasonably assure the appearance of a person as required, as well as ensure the safety of others and the community. Factors relating to the charges against the defendant are treated in 18 U.S.C. § 3142(g)(1) and (2). These include the nature of the offense, the surrounding circumstances, and the weight of the evidence against the defendant. Section 3142(g)(1) specifically notes the importance of whether the offense involves a firearm or a narcotic drug. Section 3142(g)(3) concerns the defendant's history and characteristics. Relevant features under § 3142(g)(3)(A) include the person's character, health, family ties, employment, financial status, length of residence in the community, history of alcohol or drug abuse or criminal activity, and record of appearances for court proceedings. Section 3142(g)(3)(B) concerns whether the defendant was involved in any capacity with the criminal justice system at the time of the offense

or arrest. Section 3142(g)(4) concerns the risk of danger to the community and the suitability of any collateral that the defendant would offer to secure a bond.

This Court has previously considered a Defendant's personal characteristics, including family ties and previous criminal history, in determining that a Defendant was not a danger to the community or a flight risk under Section 3142(g). *See, e.g.*, *United States v. Walls*, No. CR 2-06-192, 2008 WL 213886, at *4 (S.D. Ohio Jan. 23, 2008) (allowing release on bond for 58-year-old defendant with no criminal history and under indictment for a non-violent offense "[g]iven his ties to his family, his physical condition, and the charges"). Other courts have likewise found that where a defendant was not convicted of a violent crime, has complied with conditions of release, and had community and family ties, there exists clear and convincing evidence that a defendant is unlikely to flee or pose a danger to the community if released pending appeal. *See, e.g.*, *United States v. McDuffie*, 451 F. Supp. 3d 281, 285 (S.D.N.Y. 2020) (noting extensive family and community support made Defendant unlikely to flee); *United States v. Warshak*, No. 1:06-CR-00111, 2008 WL 696852, at *1 (S.D. Ohio. Mar. 13, 2008) (allowing defendant to remain free on bond and travel to San Diego from Ohio because of his compliance with pretrial services and lack of danger posed to the community); *United States v. Demmler*, 523 F. Supp. 2d 677, 684 (S.D. Ohio 2007) (finding no flight risk where Defendant was a "life-long resident of central Ohio," despite defendant's purported access to offshore accounts and access to counterfeit currency and documents); *United States v. Hart*, 906 F. Supp. 102, 105 (N.D.N.Y. 1995) (finding "little appreciable risk" of flight by defendant compliant with terms of release for over two years and "no danger" to community where defendant who committed fraud had no means of perpetrating offense again).

Mr. Oppong has remained on bond since November 2, 2018 and has abided by the conditions of release set by this Court. (ECF No. 9). As part of his conditions of release, he surrendered his passport. (ECF No. 11). He has continued to comply with the conditions of release following his sentencing on November 23, 2020. The presentencing investigation report completed by U.S. Probation supports Mr. Oppong's assertion that he has no criminal record or history of violence. The report also notes that Mr. Oppong is devoted to his family, church, and community, and that he has resided in Ohio since at least 1992. Several letters submitted by Mr. Oppong with his sentencing memorandum, referenced in his Emergency Motion, further support his assertion that he has strong community ties. (*See, e.g.*, ECF Nos. 56-8, 56-9, 56-14, 56-15, 56-16, 56-17). The offenses for which he was convicted, while harmful to the community, were nonviolent. Because Mr. Oppong has lost his medical license, he is not able to continue to harm the community in a manner similar to the offense conduct. This Court finds that there exists clear and convincing evidence that Mr. Oppong is not a flight risk during the pendency of his appeal and that he poses no risk of danger to others or the community if allowed to remain on bond.

### B. Substantial Question on Appeal

In addition to establishing that he does not pose a flight risk or a danger to the community, a defendant seeking release pending appeal under 18 U.S.C. § 3143(b) must also show that his appeal has not been taken for purposes of delay and that his appeal raises a substantial question of law or fact that is likely to result in a favorable outcome. Mr. Oppong submits that his motion has not been filed for delay and the Government does not dispute this. (ECF No. 72 at 8; ECF No. 74). The parties do contest whether the Defendant's appeal presents substantial questions of law likely to result in a favorable outcome on appeal. Mr. Oppong submits that he will raise three substantial issues on appeal that satisfy 18 U.S.C. § 3143(b). First, he argues that the language of the jury

instructions in this case resulted in a failure by the Government to prove beyond a reasonable doubt that he prescribed a controlled substance other than for a legitimate medical purpose and not in the usual course of medical practice, as required by 21 U.S.C. § 846. (ECF No. 72 at 4–6). He submits that this constitutes reversible error because the Government did not prove every element of the crime. (*Id.* at 6). Second, Mr. Oppong argues that signing blank prescriptions is not unlawful and that a witness should have been called to discuss his office policy and protocols. (*Id.*). Third, Mr. Oppong argues that the blank prescriptions may be evidence of medical malpractice but does not suffice to establish criminal liability for distribution of controlled substances. (*Id.* at 7).

In its response in opposition to the Emergency Motion, the Government argues that none of the issues raised by the Defendant presents a substantial question of law or fact likely to result in a favorable outcome on appeal. (ECF No. 74 at 4). The Government first argues that there was no error as to the jury instructions and cites to precedents in the Sixth Circuit that support its argument that the jury instructions adequately stated the correct law. (*Id.* at 5–9). The Government also argues that any error in jury instructions would be harmless. (*Id.* at 9). In response to Mr. Oppong's arguments that the signing of blank prescriptions is not always inappropriate, the Government argues that the testimony proffered in the case shows these prescriptions were not issued in accordance with any legitimate protocols, caveats, or instructions. (*Id.* at 9–10). The Government next argues that the Sixth Circuit has "consistently found" that circumstances surrounding the issuance of a prescription for controlled substances are relevant factors demonstrating a lack of legitimate purpose. (*Id.* at 11). The Government contends that the circumstances surrounding the issuance of prescriptions here, as well as additional evidence showing that the Defendant's conduct was intentional, establishes the requisite intent to impose criminal liability. (*Id.* at 11–12). For these reasons, the Government argues that Mr. Oppong does

not raise any substantial question of law for appellate review that would result in a favorable outcome.

The Sixth Circuit has held that an appeal raises a substantial question when it presents a "close question or one that could go either way" and that the question "is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985). Although the Court need not believe that the appeal will be decided in the defendant's favor, "[i]t is not sufficient to show simply that reasonable judges could differ . . . or that the issue is fairly debatable or not frivolous." *United States v. Persaud*, No. 1:14 CV 276, 2016 WL 1558618, at *2 (N.D. Ohio Apr. 18, 2016) (quoting *United States v. Powell*, 761 F.2d 1227, 1234 (8th Cir. 1985). Harmless errors and "question[s] as to which the defendant had not sufficiently preserved his record" do not meet the substantial question standard. *United States v. Porter*, No. 7:15-022-DCR, 2017 WL 1095040, at *1 (E.D. Ky. Mar. 22, 2017) (quoting *Powell*, 761 F.2d at 1233).

To succeed under 18 U.S.C. § 3143(b), the substantial question presented by the Defendant must also be likely to result in one of several favorable outcomes: reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. Mr. Oppong argues that the issues he raises are likely to result "in either a new trial, or a reversal." (ECF No. 72 at 8). The Government argues that sufficient evidence was presented at trial to support his conviction on Count VII, which is the only conviction that Mr. Oppong's Emergency Motion explicitly addresses. (ECF No. 74 at 8–9). The Government argues that Mr. Oppong would need to demonstrate that the substantial questions would likely lead to a new trial

8

on *all* counts to justify release under 18 U.S.C. § 3143(b). (*Id.* at 12). In his Reply, Mr. Oppong argues that a reversal on Count VII will require resentencing such that it falls within the scope of 18 U.S.C. § 3143(b). (ECF No. 75 at 2). He also contends that that he has raised arguments related to each count of which he was convicted. (*Id.*).

Where a defendant cannot show that a resolution in his favor on the "substantial questions" raised in his motion "would result either in a reversal of *all* of his convictions or in a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process, he is not entitled to a continuation of his bond pending appeal." *United States v. Terry*, No. 1:10CR390, 2011 WL 5008415, at *5 (N.D. Ohio Oct. 19, 2011) (citing *Morison v. United States*, 486 U.S. 1306, (1988)). In *United States v. Fillers*, No. 1:09-CR-144, 2012 WL 5398882 (E.D. Tenn. Nov. 5, 2012), the court opted not to address whether the Defendant presented a substantial question where the arguments raised would only produce "a reversal of fewer than all such counts" because the justification for bail pending appeal does not survive "if one cou[n]t imposing imprisonment survives." 2012 WL 5398882, at *5 (quoting *United States v. Powell*, 761 F.2d 1227, 1233 (8th Cir. 1985)). Release on bond pending appeal under 18 U.S.C. § 3143(b) ensures that a defendant "should not be imprisoned under a legally erroneous sentence." *Id.* It remains the Defendant's burden under 18 U.S.C. § 3143(b) to show that the substantial questions implicate all counts upon which he was convicted, such that a favorable outcome on appeal would result in a reversal, new trial, or a significant change in sentence.

Mr. Oppong was convicted of five counts by the jury. (ECF No. 29). This Court sentenced him to twelve months and one day on each count, imposed to run concurrently. (ECF No. 62). Mr. Oppong has raised three issues in his Emergency Motion. First, he contends that the jury instruction as to Count VII gave the jury the option to convict without finding each element of the

9

crime beyond a reasonable doubt. (ECF No. 72 at 5). Mr. Oppong argues that, as a result, the Government has not proved beyond a reasonable doubt that he both prescribed the drug other than for a legitimate medical purpose and not in the usual course of practice. (*Id.*). Mr. Oppong asserts this constitutes a reversible error. (*Id.*). Even if Mr. Oppong achieves a favorable outcome on this argument on appeal, this will only impact Count VII. Since his sentences have been imposed to run concurrently, a favorable outcome on Count VII will not result in any change to the length or nature of his sentence on the remaining counts. He must still serve twelve months and one day on each of the remaining four counts.

Second, Mr. Oppong argues that a witness should have been called to discuss whether his office policy and protocols could explain the signing of blank prescriptions. (*Id.* at 6). He asserts that signing blank prescriptions is not necessarily unlawful. (*Id.*). The Government argues that this point is "without merit" because the evidence at trial showed Mr. Oppong was pre-signing blank prescriptions that were not in compliance with the law and were not "being issued in accordance with any legitimate protocols, caveats or instructions." (ECF No. 74 at 9–10). The Government contends that any additional information about policies concerning blank prescriptions could not justify Mr. Oppong's conduct of signing prescriptions and progress notes for patients seen by Darrell Bryant, "who was not qualified to treat patients or issue prescriptions for controlled substances." (*Id.* at 10). This Court has previously found that the Government presented "ample evidence from other medical professionals that signing blank prescriptions was outside the course of professional medical practice." (ECF No. 52 at 5). While Mr. Oppong's arguments about blank prescriptions may impact more than one count, Mr. Oppong has not carried his burden of showing that his blank prescription argument relates to each of the five counts of which he was convicted. Because of the concurrent nature of his sentences, Mr. Oppong cannot succeed under 18 U.S.C.

§ 3143(b) unless he raises a substantial question as to all of the counts for which he was convicted and sentenced.

Third, Mr. Oppong argues that "[t]he evidence concerning the distribution counts" other than Count VII only passes the threshold for civil medical malpractice liability, not criminal liability. (*Id.*). Count VII, however, is the only distribution count of which Mr. Oppong was convicted and later sentenced. (ECF Nos. 29, 62). His convictions for a health care fraud scheme and health care false statements cannot reasonably be described as "distribution" counts. Additionally, this Court has previously found that the Government "put on ample evidence to convict Oppong" on the criminal charges, including the requisite intent for criminal liability. (ECF No. 52 at 5). Because Mr. Oppong was only convicted of one distribution count, his argument about evidence underlying multiple distribution counts does not raise a substantial question that will impact each count for which he was convicted and sentenced.

While Mr. Oppong argues that his Emergency Motion raises "substantial questions" as to each of the counts, Mr. Oppong has not met his burden of demonstrating that to this Court. This Court need not determine whether any of the questions presented are substantial in nature because none will result in a favorable outcome on all five counts for which Mr. Oppong was convicted. Even if Mr. Oppong succeeds on appeal, the concurrent nature of the sentences imposed means that his overall sentence of imprisonment—twelve months and one day on each count—will not be substantially altered but for a successful appeal on an issue that is materially connected to each count.

### C. Exceptional Circumstances

While the Defendant has not succeeded under 18 U.S.C. § 3143(b), there is an additional avenue for release found in 18 U.S.C. § 3145(c). This provision states that:

11

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c). As previously discussed, Mr. Oppong's inability to succeed on his 18 U.S.C. § 3143(b) motion resultingly places him in the category of individuals "subject to detention" pursuant to that section. This brings him within the ambit of persons who may otherwise be released pending appeal under the terms of 18 U.S.C. § 3145(c). *See United States v. Gray*, No. 2:20-cr-43, 2020 WL 2703148, at *3 (S.D. Ohio May 26, 2020) (once a defendant is ordered detained, "an exception contained in § 3145(c) allows release pending sentencing or appeal . . . '[when] there are exceptional reasons why such person's detention would not be appropriate'"). 18 U.S.C. § 3145(c) can transform a situation of mandatory detention "into one where release is possible." *United States v. West*, No. 1:18-cr-00002, 2020 WL 2572482, at *6 n.7 (M.D. Tenn. May 21, 2020).

To be released pending sentencing under 18 U.S.C. § 3145(c), a Defendant must first establish by clear and convincing evidence that he is not likely to flee and that he does not pose a danger to any other person or the community. *See United States v. Wiseman*, 461 F. Supp. 3d 740, 741 (M.D. Tenn. 2020) (citing *United States v. Christman*, 596 F.3d 870 (6th Cir. 2020)) (finding that defendant must not only show exceptional circumstances but also that he is not a flight risk or a danger to the community). As discussed previously, Mr. Oppong is not likely to flee and does not pose a danger to any other person or the community.

Courts have found 18 U.S.C. § 3145(c) to be inappropriate for defendants who have not shown that they do not pose a danger to others and the community, who are likely to be noncompliant with the terms of their release, and who are high-risk prisoners who will create an

12

increased burden on pretrial services. *See, e.g.*, *United States v. Clayton*, 2020 WL 1940877, at *3 (N.D. Ohio Apr. 22, 2020) (finding defendant posed a danger to others and had a history of parole and supervised release violations); *Gray*, 2020 WL 2703148, at *3 (disallowing release under 18 U.S.C. § 3145(c) because Defendant posed a flight risk and a danger to the community); *United States v. Clark*, No. 19-40068-10-HLT, 2020 WL 1446895, at *7 (D. Kan. Mar. 25, 2020) ("A defendant who is unable to comply with conditions of release poses potential risk to law enforcement officers . . . pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody."); *United States v. Aiad-Toss*, No. 4:19-cr-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020) (observing that "releasing . . . to home detention and electronic monitoring creates its own risks and undue burden on pretrial services"). Mr. Oppong has been released on bond for over two years without incident. Continuation of his release on bond will not result in any increased risks or burdens to pretrial services because it maintains the status quo.

18 U.S.C. § 3145(c) also requires that there be exceptional circumstances that warrant a defendant remaining free from custody during the pendency of an appeal. Mr. Oppong is currently 62 years old and suffers from hypertension, for which he takes multiple blood pressure medications, per the presentencing investigation report completed by U.S. Probation. The United States is still deep in the thralls of the COVID-19 pandemic. "There is no dispute that COVID-19 presents serious ongoing concerns for millions of people, especially those with certain underlying medical conditions." *Clayton*, 2020 WL 1940877, at *2. The CDC has identified hypertension as one of those underlying medical conditions that might place an individual at increased risk for severe illness or death from COVID-19.[1] Some courts have found that the threat posed by COVID-

---

[1] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 10, 2021). Hypertension was found to be the

13

19, coupled with an individual's underlying risk factors and conditions in a detention facility, can present a "unique combination of circumstances" that meets the "exceptional circumstances" requirement. *United States v. McKenzie*, 450 F. Supp. 3d 459, 452 (S.D.N.Y. 2020); *see also United States v. Garraway*, No. 19-CR-857-04 (NSR), 2021 WL 75662, at *3 (S.D.N.Y. Jan. 7, 2021) (granting relief under 18 U.S.C. § 3145(c) for individual with asthma who posed no flight risk or danger to the public); *United States v. McDuffie*, 451 F. Supp. 3d 281, 286 (S.D.N.Y. 2020) (finding the "combination of a once-in a lifetime pandemic and an immune system disorder" demonstrated exceptional circumstances). At present, "the COVID-19 pandemic is extraordinary and unprecedented in modern times and presents a clear and present danger throughout the United States and the world." *Garraway*, 2021 WL 75662, at *3. This Court has previously found that hypertension might increase the risk of severe illness from COVID-19 such that it may constitute "extraordinary and compelling reasons" for purposes of compassionate release or a sentence reduction. *See, e.g.*, *United States v. Watkins*, 2021 WL 191466, at *2 (S.D. Ohio Jan. 19, 2021); *United States v. Lindahl*, 2020 WL 7767789, at *4 (S.D. Ohio Dec. 30, 2020). This Court also notes that the medical understanding of the virus and its comorbidities, as well as the emergent new strains, is constantly evolving. In light of the significant uncertainty over the trajectory of the pandemic, this Court finds that the potential additional risk of suffering significant consequences from COVID-19 by individuals with underlying conditions, such as Mr. Oppong, can render detention inappropriate. This is especially true where a defendant like Mr. Oppong is currently at liberty and can better protect himself from COVID-19 than he would otherwise be able if he were incarcerated.

---

most prevalent comorbidity in patients hospitalized for COVID-19 and was found to be "significantly associated with higher rates of mortality." *See* Vikramaditya Reddy Samala Venkata et al., *Abstract P135: Covid-19 and Hypertension: Pooled Analysis of Observation Studies*, 76 Hypertension AP135 (2020), https://www.ahajournals.org/doi/10.1161/hyp.76.suppl_1.P135.

Jails and prisons, including federal prisons, have been particularly at risk from the COVID-19 pandemic. COVID-19 can rampantly spread once it enters a facility, due to the very nature of the congregate setting. According to the CDC, social distancing in correctional and detention environments can be difficult to practice, especially because of the risk posed by asymptomatic transmission.[2] The number of COVID-19 cases is 5.5 times higher among people who are incarcerated, as compared to the general population.[3] This Court previously recommended that the Defendant be incarcerated at FCI Morgantown in West Virginia. (ECF No. 62). As of February 10, 2021, this facility has 13 cases of COVID-19 amongst incarcerated people and 5 amongst its staff.[4] To date, 218 incarcerated people have recovered from COVID-19 at this facility. As of February 10, 2021, there are 1,594 incarcerated people in federal custody who are currently afflicted with COVID-19. Over 45,000 incarcerated people have tested positive for COVID-19 since the pandemic began, and 216 people have died of COVID-19 while in the custody of BOP. As the Eastern District of Michigan recognized in *United States v. Frost*, 455 F. Supp. 3d 395, 398 (E.D. Mich. 2020), "COVID-19 is dangerous everywhere, but the novel disease is especially harmful within correctional institutions." Mr. Oppong's health condition, coupled with the heightened risk of contracting COVID-19 in jails and prisons and the current extent of the pandemic, presents exceptional circumstances under 18 U.S.C. § 3145(c).

---

[2] CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Dec. 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

[3] Brendan Saloner et al., *COVID-19 Cases and Deaths in Federal and State Prisons*, 324 JAMA 602 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7344796/.

[4] BOP, COVID-19, https://www.bop.gov/coronavirus/ (last accessed February 10, 2021 at 5:00 p.m.). This Court takes note that yesterday's data showed 14 current cases amongst incarcerated people at FCI-Morgantown and 220 incarcerated people who have recovered.

## IV. CONCLUSION

This Court finds that exceptional circumstances warrant allowing Mr. Oppong to remain on bond during the pendency of his appeal under 18 U.S.C. § 3145(c). His release is to last only until the conclusion of his appeal, the conclusion of the current public health emergency, or until otherwise ordered. This Court expects Mr. Oppong to comply with all conditions of his release, and that a violation of any condition may subject him to immediate remand. Accordingly, Mr. Oppong's Emergency Motion (ECF No. 72) is **GRANTED** and the duplicative motion (ECF No. 71) is **MOOT**.

    **IT IS SO ORDERED.**

                                            **ALGENON L. MARBLEY**
                                            **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: February 11, 2021**