IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BERNARD OPPONG, | : |
| | : |
| Petitioner, | : Case No. 2:18-CR-0228 |
| | : |
| v. | : Chief Judge Algenon L. Marbley |
| | : |
| UNITED STATES OF AMERICA, | : |
| | : |
| Respondent. | : |

## OPINION & ORDER

This matter is before this Court on Petitioner Bernard Oppong's Motion to Vacate Sentence. (ECF Nos. 90, 91). The Government has filed a response in opposition. (ECF No. 93). For the following reasons, Petitioner's Motion is **DENIED**.

### I. BACKGROUND [1]

In May 2019, a jury found Dr. Oppong guilty of one count of health care fraud, 18 U.S.C. § 1347, three counts of making false health care statements, 18 U.S.C. § 1035, and one count of conspiracy, 21 U.S.C. § 846, specifically, to dispense controlled substances in violation of 21 U.S.C. § 841(a)(1). (ECF No. 29). Dr. Oppong later moved for a new trial, arguing that his trial counsel was ineffective. (ECF No. 43). This Court denied his motion in April 2020. (ECF No. 52 at 4–5). In November 2020, this Court sentenced Dr. Oppong to twelve months and one day of imprisonment on each count, with the sentences to run concurrently, and ordered him to self-surrender to the U.S. Marshals Service in February 2021. (*Id.*).

---

[1] Because the parties are familiar with the facts of this case, this Court does not restate them except as necessary to explain its decision.

In December 2020, Dr. Oppong filed a timely notice of appeal. (ECF Nos. 65). The Sixth Circuit Court of Appeals denied his appeal and affirmed this Court's denial of his Motion for a New Trial. (ECF Nos. 80, 81).

A few months after the Sixth Circuit affirmed Dr. Oppong's conviction, the Supreme Court decided *Ruan v. United States*, addressing the requisite *mens rea* for a violation of 21 U.S.C. § 841, which "makes it a federal crime, '*except as authorized*, . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance.'" 597 U.S. 450, 454 (2022) (cleaned up) (quoting 21 U.S.C. § 841). The Court held that § 841's *mens rea*—"knowingly and intentionally" applies not only to the language that follows it—"to manufacture, distribute, or dispense . . . a controlled substance"—but also to the "except as authorized" exception. *Id.* at 468. In other words, the Government must show that a physician *subjectively knew* that the prescription in question was unauthorized; it is not enough to show that the physician was objectively unauthorized to issue it.

Dr. Oppong filed a Motion to Vacate Sentence and Judgment under 28 U.S.C. § 2255, arguing that the holding of *Ruan* with respect to § 841 also applies to the charges for which he was convicted and that as a result: (1) the jury instructions at his trial were erroneous because they did not convey *Ruan*'s subjective standard to the jury; and (2) the Government did not present sufficient evidence of a culpable state of mind to support his convictions. Although Dr. Oppong argues that *Ruan* undermines each of his convictions, he focuses his argument on his conviction for § 846, *conspiracy* to distribute and dispense a controlled substance in violation of § 841. In response, the Government argues that this Court's original jury instructions with respect to Dr. Oppong's charge under § 846 adequately conveyed the requisite *mens rea*, and that *Ruan*'s holding does not apply to the other two charges of which Dr. Oppong was convicted, health care fraud, §

2

1347, and making false health care statements, § 1035. The Government also argues that it did present sufficient evidence of Dr. Oppong's subjective intent at trial.

Having reviewed briefing from the parties, who clarified their contentions at oral argument, this matter is now ripe for determination on the merits.

## II. STANDARD OF REVIEW

28 U.S.C. § 2255, which provides a statutory remedy equivalent to the common law petition for a writ of habeas corpus for persons convicted in federal court, "permits courts to vacate sentences which were imposed 'in violation of the Constitution or laws of the United States.'" *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting 28 U.S.C. § 2255). A prisoner seeking relief pursuant to § 2255 "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)). The standard here is high: Section 2255 serves not as a mechanism to challenge a technical violation but rather "a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Ferguson*, 918 F.2d at 630 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)); *see also United States v. Frady*, 456 U.S. 152, 166 (1982) (noting that a Section 2255 petitioner faces a "significantly higher hurdle" than on direct appeal).

## III. LAW & ANALYSIS

### A. *Ruan v. United States*

Since Dr. Oppong argues that the Supreme Court's decision in *Ruan* requires that his sentence be vacated and that he be discharged, this Court begins by reviewing the Supreme Court's analysis in *Ruan*. Section 841 makes it a federal crime to knowingly or intentionally manufacture,

3

distribute, or dispense controlled substances, with exceptions for authorized actions, such as some prescriptions by registered doctors. *Ruan*, 597 U.S. at 450. A registered doctor's prescription for a controlled substance is authorized "only if the prescription is 'issued for a legitimate medical purpose by an individual practitioner acting is the usual course of his professional practice.'" *Id.* (quoting 21 C.F.R. § 1306.04(a)). The two defendants in *Ruan*, Drs. Ruan and Khan, were charged separately and convicted under § 841 for dispensing controlled substances not in compliance with the authorization requirements. At their respective trials, both challenged the *mens rea* on which the jury was instructed. The Tenth and Eleventh Circuits affirmed their convictions, and when both filed petitions for certiorari with the Supreme Court, the Court consolidated the cases to determine whether the language of § 841 required the Government to prove that the physician in question *knew* or *intended* that the prescription was unauthorized, or if it was sufficient to show that the prescription was *in fact* not authorized. *Id.* at 2375.

The Court held that the "knowingly or intentionally" *mens rea* in § 841 applies to the "except as authorized" clause that precedes it. *Id.* Meaning that, after a defendant produces evidence of authorization, the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner. *Id.* at 2376.

Writing for the Court, Justice Breyer reasoned that since "our criminal law seeks to punish the vicious will," analysis of criminal statutes typically "start[s] from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state." *Id.* at 2376 (internal quotation marks omitted). When a statute contains a "general scienter provision," such as § 841's "knowingly or intentionally" language, the Court has held that it "modifies not only the words directly following it, but also those other statutory terms that 'separate wrongful from innocent acts.'" *Id.* at 458 (quoting *Rehaif v. United States*, 139 S.Ct.

4

2191, 2195 (2019)). Given that, in the context of prescribing, the concept of authorization plays an essential role in distinguishing wrongful conduct from "socially beneficial conduct" and overdeterrence is particularly undesirable, the Court concluded that § 841's scienter provision applies to the authorization exception. *Id.* at 459.

The Court rejected the Government's proposed *mens rea*, an "objectively reasonable good-faith effort" standard. *Id.* at 467. In so doing, the Court explained that the Government may still "prove knowledge of a lack of authorization through circumstantial evidence," and "the more unreasonable a defendant's asserted beliefs or misunderstandings are . . . the more likely the jury . . . will find that the Government has carried its burden of proving knowledge." *Id.* (cleaned up).

Declining to determine whether the juries had been properly instructed in the first instance, the Court remanded the cases back to the Tenth and Eleventh Circuits. *Id.* at 465-68. On remand, both the Tenth and Eleventh Circuits concluded that the jury instructions at the defendants' respective trials "inadequately conveyed the required mens rea to authorize conviction under § 841(a)" and that the error was not harmless beyond a reasonable doubt. *United States v. Ruan*, 56 F.4th 1291, 1298 (11th Cir. 2023); *see also United States v. Kahn*, 58 F.4th 1308 (10th Cir. 2023).

### B. The § 846 Instruction

#### 1. Conspiracy

The Eleventh Circuit also analyzed the effect of the Supreme Court's decision on Ruan's conspiracy conviction under § 846. Like Dr. Oppong, Ruan was convicted under § 846 for conspiracy to dispense controlled substances in violation of § 841(a)(1). A defendant violates § 846 if: (1) there was "an agreement to violate the drug laws"; (2) the defendant knew of the agreement; and (3) the defendant decided voluntarily to join or participate in the agreement. *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019). At Ruan's trial, the jury was "instructed

5

to convict only if they found 'two or more people in some way agreed to try and accomplish a shared unlawful plan to distribute or dispense . . . the alleged controlled substance or substances'" and that "the defendants knew the unlawful purpose of the plan and willfully joined it.'" *Ruan*, 56 F.4th at 1299.

Identifying that the elements of § 846 required "the jury to find that the defendants *knew of the illegal nature of the scheme* and agreed to participate in it," the Eleventh Circuit determined that the erroneous § 841 instruction had "no effect on the jury's analysis" of the § 846 conspiracy charge. *Id.* at 1299 (emphasis added). This was because, to convict for conspiracy, a properly instructed jury would need to find that the physician: (1) knew that he was dispensing a controlled substance; and (2) knew that he was doing so in an unauthorized manner. Accordingly, the court concluded that the instructions for Ruan's § 846 charge sufficiently conveyed the *mens rea* required by the underlying § 841 charge. The Sixth Circuit endorsed this reasoning in *United States v. Hofstetter*, finding that the trial court's instructions were not plainly erroneous when it "instructed the jury they had to find that [the defendant] 'combined, conspired, confederated and agreed . . . to knowingly, intentionally, and without authority distribute, or cause to be distributed, outside the usual course of professional practice and not for a legitimate medical purpose,' a controlled substance." 80 F.4th 725, 732 (6th Cir. 2023).

The same logic applies to the instructions issued at Dr. Oppong's trial, which resemble the instructions in *Ruan*. This Court instructed the jury as follows:

> For you to find the defendant guilty of the conspiracy charge, the government must prove . . . . [f]irst, that two or more persons conspired, or agreed, to *commit the crime* of knowingly and intentionally distributing or dispensing, or causing the distribution or dispensing, of a Schedule III controlled substance. And second, that the defendant *knowingly and voluntarily* joined the conspiracy.

6

(ECF No. 41 at 86-87) (emphases added). As the Government points out, these instructions, like those in *Ruan*, "required the jury to find that Petitioner acted with subjective knowledge" in order to convict on the conspiracy charge. (ECF No. 93 at 6). Accordingly, the instructions issued with respect to Dr. Oppong's § 846 charge were not erroneous.

### 2. Deliberate Ignorance

Even though the above conclusion is sufficient to deny Dr. Oppong's Motion with respect to his conspiracy charge, it is worth noting that the validity of his conviction is also bolstered by this Court's explanation of deliberate ignorance to the jury. In *United States v. Anderson*, a physician who was tried before the undersigned brought a *Ruan* challenge his convictions under § 841 and § 846. 67 F.4th 755, 759 (6th Cir. 2023). In instructing the jury on Anderson's § 841 charge, the undersigned issued an instruction with respect to the concept of deliberate ignorance that was identical to an instruction that the undersigned offered at Dr. Oppong's trial:

> Although knowledge of the defendant cannot be established merely by demonstrating that he was careless, knowledge may be inferred if the defendant deliberately blinded himself to the existence of a fact. No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that the controlled substances as alleged in Count 7 were distributed or dispensed without a legitimate medical purpose in the usual course of a professional practice, then you may find that the defendant knew that this was the case.
>
> But you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that the controlled substances were distributed or dispensed other than for a legitimate medical purpose while acting in the usual course of professional practice and that the defendant deliberately closed his eyes to what was obvious. *Carelessness, or negligence, or foolishness on his part are not the same as knowledge, and are not enough to find him guilty on this count.*

*Id.* at 76 (emphasis in original); (ECF No. 41 at 89-90). The Sixth Circuit in *Anderson* held that this Court's instructions properly oriented the jury to determine the defendant's subjective mindset in issuing the prescriptions by focusing its attention on "knowledge, and no lesser level of

7

culpability." *Id.* at 766. This, the court reasoned, was sufficient to meet the standard required by the Supreme Court in *Ruan*.[2] *Id.; see also United States v. Hofstetter*, 80 F.4th 725, 731 (6th Cir. 2023) (concluding that *Anderson* foreclosed a physician's argument that an instruction did not "substantially cover the concept of knowledge through the description of deliberate ignorance and the juxtaposition of knowledge with careless, negligence, or foolishness.").[3] Dr. Oppong's Motion with respect to his § 846 conviction must fail, as well.

### 3. Good Faith

The Government argues that this Court's instructions were also adequate because they included a good-faith instruction. On remand in *Ruan*, the Eleventh Circuit explained its view that "[w]ithout further qualification," good faith instructions do not satisfy *Ruan* because "the phrase 'good faith' encompasses both subjective and objective good faith," and is therefore, "an imprecise proxy for knowledge." *Id.* In other words, only a subjective good faith instruction will suffice. This Court issued the following good-faith instruction at Dr. Oppong's trial:

> If a doctor dispenses a drug in good faith in medically treating a patient, then the doctor has dispensed the drug for a legitimate medical purpose in the course of medical practice. That is, he has dispensed the drug lawfully.
>
> Good faith in this context means good intentions in the honest exercise of best professional judgment as to a patient's need. It means the doctor acted in accordance with what he believed to be proper medical practice. If you find that the defendant acted in good faith in dispensing the drugs, then you must find him not guilty.

---

[2] Judge White, however, disagreed with the majority's opinion that a deliberate ignorance instruction can satisfy the *Ruan mens rea* requirement since, in her view, the authorization element "does not depend on perceiving or ignoring probabilities." *Id.* at 771 (White, J., dissenting). She also opined that "[t]elling the jury that carelessness, negligence, or foolishness is insufficient is not tantamount to instructing what mental state is required." *Id.*

[3] Like Judge White in *Anderson*, Judge Cole wrote separately in *Hofstetter* to express disagreement with the notion that a deliberate ignorance instruction satisfies *Ruan*. *Id.* at 732 (Cole, J., concurring). Judge Cole concurred in the judgement but made clear this he only did so because he was bound by the earlier precedent set in *Anderson*. *Id.*

8

(ECF No. 41 at 88-89). Although this Court shares the Government's view that the instruction does use some subjective language—"what *he believed* to be proper medical practice"—this court is again bound by the Sixth Circuit's consideration of an identical instruction issued in *Anderson*. The *Anderson* court explained that, in its view, the instruction above "did not contain any 'further qualification' that made clear [the physician's] subjective good faith was the relevant inquiry." *Id.* at 765 (quoting *Ruan*, 56 F.4th at 1297). Under *Anderson*, this instruction alone would be inadequate to convey the requisite *mens rea*. But as discussed above, the conspiracy and deliberate ignorance instructions offered at Dr. Oppong's trial sufficed.

### C. Application of *Ruan* to Other Charges

Dr. Oppong also briefly asserts, without substantive argument, that *Ruan*'s *mens rea* holding also extends to—and undermines—his convictions for health care fraud, 18 U.S.C. § 1347, and false health care statements, 18 U.S.C. § 1035. It does not. As threshold matter, *Ruan* does not, on its own terms, extend its conclusion to other provisions. But even if this Court were to extend its logic, the jury instructions issued in this case were sufficient.

With respect to the health care fraud charge, this Court instructed the jury that they must find: (1) "that the defendant knowingly and willfully executed a scheme to defraud any health care benefit program;" (2) "that the scheme related to a material fact or included a material misrepresentation or concealment of a material fact;" (3) "that of [sic] the defendant had the intent to defraud." And with respect to the false health care statement charges, this Court instructed that the jury must find, among other things, that "the defendant falsified, concealed, or covered up by any trick, scheme, or device a material fact or made a materially false, fictitious, or fraudulent statement or representation" and "did so knowingly and willfully." This Court explained that "[a] representation is, quote, false, if it is known to be untrue or it is made with reckless indifference as to its truth or falsity" or "when it constitutes a half-truth or effectively omits or conceals a

9

material fact, provided it is made with intent to defraud." These instructions, without a doubt, required the jury to find that Dr. Oppong had the culpable *mens rea* required by *Ruan*, and, as a result, there was no error with respect to the instructions for Dr. Oppong's other charges.

### D. Sufficiency of the Evidence to Support Oppong's Convictions

Finally, Dr. Oppong challenges the sufficiency of the Government's evidence at trial with respect to his subjective intent. At oral argument, the Government argued that the evidence at trial showed that Dr. Oppong pre-signed prescriptions for Suboxone in an opioid addiction treatment center without the dosage or quantity and left them for anyone to sign. Dr. Oppong now asserts that, subjectively, his intent was to provide blank prescriptions to individuals he trusted as an administrative convenience. He explains that he would have testified to that effect had his trial counsel allowed him to take the stand.

Although a close call, this Court is persuaded that there was sufficient evidence of subjective intent at Dr. Oppong's trial. As the Supreme Court explained in *Ruan*, "[t]he Government, of course, can prove knowledge of a lack of authorization through circumstantial evidence" and through reference to the objective criteria that defines authorization: "legitimate medical purpose" and the "usual course" of "professional practice." *Ruan*, 597 U.S. at 467 (quoting 21 C.F.R. § 1306.04(a)). And "'the more unreasonable' a defendant's 'asserted beliefs or misunderstandings are,' . . . 'the more likely the jury . . . will find that the Government has carried its burden of proving knowledge.'" *Id.* This Court finds the subjective belief that Dr. Oppong purports to have held—that he was authorized to leave blank, signed prescriptions for others to fill out as needed—is so unreasonable, when measured against objective criteria, that the Government carried its burden with respect to knowledge, even absent direct evidence of Dr. Oppong's intent.

10

## IV. CONCLUSION

For the above reasons, Petitioner's Motion (ECF Nos. 90, 91) is **DENIED**. Additionally, the defendant is **HEREBY ORDERED** to self-surrender to his designated Bureau of Prisons facility as directed by the United States Marshal's Service, but **NO LATER THAN MARCH 1, 2024,** to serve his imposed time of imprisonment.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: February 7, 2024**